In re Aharon Roni SAS and
Orna Cohen, Debtors.

No. BK–S–10–27221–MKN.

United States Bankruptcy Court,
D. Nevada.

Feb. 19, 2013.

Arun Gupta, Las Vegas, NV, for Debtors.

Christine A. Roberts, Sullivan, Hill, Lewin, Rez, & Engel, Las Vegas, NV, for Trustee.

## ORDER DENYING TRUSTEE'S MOTION FOR TURNOVER OF ARBITRATION FUNDS AND TO REVOKE ABANDONMENT ON ORDER SHORTENING TIME[1]

MIKE K. NAKAGAWA, Bankruptcy Judge.

On October 10, 2012, the court heard the Motion for Turnover of Arbitration Funds and to Revoke Abandonment on Order Shortening Time ("Turnover Motion"). The appearances of counsel were noted on the record. At the conclusion of the hearing, the court took the matter under submission.

## BACKGROUND

On or about April 14, 2004, Aharon Roni Sas ("Sas") was injured in a car accident. About a year later, Sas pursued a personal injury claim for the accident, and hired attorney Imanuel B. Arin ("Attorney Arin") of the law firm Arin & Associates, P.C.[2] ("Arin & Associates"). On June 10, 2005, Sas filed a complaint against Robert M. Castro and Air One Transport for the car accident ("Lawsuit").[3] In June 2009, the parties agreed to submit the matter to

1. In this Order, all references to "Section" shall be to provisions of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless otherwise indicated. All references to "FRCP" shall be to the Federal Rules of Civil Procedure. All references to "FRE" shall be to the Federal Rules of Evidence.

2. Apparently, Sas originally was a client of the law firm Parker, Nelson, & Arin, Chtd.,

however, that firm was dissolved and his representation for the personal injury claim continued with Attorney Arin at Arin & Associates. The representation was on a 40% contingency fee, plus reimbursement of costs advanced.

3. The court takes judicial notice, pursuant to FRE 201(b)(2) and (c)(1), of the court records of the Eighth Judicial District Court, Clark

binding arbitration, subject to a cap on recovery of $200,000 from the named defendants.[4]

On September 11, 2010, Sas and his spouse, Orna Cohen (jointly "Debtors") filed a voluntary Chapter 7 bankruptcy petition. When the Debtors filed their bankruptcy petition, they did not list the Lawsuit on their personal property Schedule "B," but did identify its caption and case number in their Statement of Financial Affairs ("SOFA").[5] Trustee Yvette Weinstein ("Trustee") questioned the Debtors about the Lawsuit during their 341 meeting on October 18, 2010, and afterwards she filed an Initial Asset Report for Debtors' case.

On October 19, 2010, Debtors filed an Amended Personal Property Schedule "B," and an Amended Exemption Schedule "C." For the category of personal property titled "Other contingent and unliquidated claims ...," the Debtors listed "Personal Injury Claim (Case# : A505324) SAS VS CASTRO/AIR ONE TRANSPORT (ARIN & ASSOCIATES)," with a value of $16,150. Debtors listed an exemption of $16,150 for the personal injury claim on their Schedule "C" based on Nev.Rev.Stat. § 21.090(1)(u)[6], which was the maximum allowed for that exemption. On October 20, 2010, Debtors' bankruptcy case was

changed from "No Asset" to "Asset." On October 22, 2010, the Debtors filed a further amendment to Schedules "B" and "C" that changed only the exemption of an automobile, but did not change the information for the personal injury claim.

On November 18, 2010, the Trustee filed notice of her intention to abandon any interest in the Debtors' residence.

On December 20, 2010, Debtors received their discharge.

On January 25, 2011, the Trustee filed a "Report of No Distribution," indicating that she "made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and there is no property available for distribution from the estate over and above that exempted by law...." She also certified that the Debtors' estate had been fully administered.

On January 26, 2011, Debtors' case was changed from "Asset" to "No Asset."

On August 24, 2011, the Lawsuit went to arbitration.

On October 26, 2011, the court entered an order discharging the Trustee and closing the bankruptcy case.[7]

County, Nevada, in *Sas v. Castro, et al.,* Case No. 05A505324.

4. A copy of the stipulation to submit the matter to binding arbitration is attached as Exhibit "C" to the Declaration of Imanuel B. Arin, Esq. ("Arin Declaration")

5. In the category of "Suits and administrative proceedings ...", Debtor's SOFA discloses the Lawsuit as "CASE NO: A505324, SAS VS CASTRO/AIR ONE TRANSPORT(ARIN & ASSOCIATES)." The Lawsuit was described as "Accident Claim (Debtor is plaintiff)."

6. Nevada Revised Statute § 21.090(1)(u) allows for exemption of "[p]ayments, in an amount not to exceed $16,150, received as

compensation for personal injury, not including compensation for pain and suffering or actual pecuniary loss, by the judgment debtor or by a person upon whom the judgment debtor is dependent at the time the payment is received."

7. The Trustee claims that sometime before the case was closed, she called Attorney Arin about the Lawsuit, and according to his law office, the case had not settled and was worth about $20,000. Attorney Arin disputes that he spoke with the Trustee before the case was closed, based on his review of office records.

On October 30, 2011, the arbitrators awarded $531,846.95 to Sas [8], which was limited to $200,000 ("Arbitration Funds") under the agreed cap.

On August 7, 2012, the court reopened the bankruptcy case at the Debtors' request. Debtors' motion stated that they wanted to amend their schedules to include additional prepetition creditors, the arbitration award, and update the "outcome of lawsuits that were included in [sic] original statement of financial affairs."

On August 24, 2012, Attorney Arin filed a motion seeking permission to remit the Arbitration Funds to the Trustee, less $80,000 representing the 40% contingency fee, plus costs of $25,050.69. The Trustee opposed Attorney Arin's Motion, and was joined in the opposition by secured creditor Roni Shaked ("Shaked").[9] Attorney Arin withdrew his motion before a hearing was held on the matter.

On September 14, 2012, Trustee filed the instant Turnover Motion.[10] The Trustee argues that she did not affirmatively abandon the Lawsuit pursuant to Sections 554(a) or (b), and thus it remained property of the estate and subject to turnover under Section 542. In the alternative, if technical abandonment is found under Section 554(c), the Trustee suggests that revocation of the abandonment should be granted because she was given false information about the Lawsuit. Moreover, the Trustee asserts that there are insufficient funds to pay Attorney Arin and creditor Shaked, as well as the Debtors' exemption, from the Arbitration Funds.

On October 8, 2012, Attorney Arin filed opposition, arguing that technical abandonment under Section 554(c) occurred when the Debtors' case was closed, that he was entitled to rely on the abandonment, and the facts do not warrant an exception to the general irrevocability of abandonment. He also noted that a request for turnover of assets requires the filing of an adversary proceeding.

On October 9, 2012, the Trustee filed a reply asserting that the Debtors and their counsel deliberately misled her about the Lawsuit's value, and had an ongoing duty to correct Debtors' schedules when they learned of the increase in value. She also noted that a third creditor, Plaintiff Funding Holding, Inc. ("Plaintiff Funding"), is claiming a security interest in the Arbitration Funds [11]. As a result, the Trustee claims that there are at least three parties asserting competing security interests in the Arbitration Funds: Attorney Arin—$80,000 in fees, plus $25,050.69 in costs; Shaked—$92,012.40 [12]; Plaintiff Funding—$122,879.55 [13]. The total of the claims

---

8. A copy of the arbitrators' decision is attached as Exhibit "D" to the Arin Declaration.

9. Shaked filed a proof of claim in Debtors' bankruptcy case for $95,012.40, based on a judgment and prejudgment writ of attachment.

10. The hearing was scheduled on an order shortening time entered on September 17, 2012.

11. Plaintiff Funding filed a proof of claim for $122,879.55, based on its advancement of money to Sas in anticipation of the proceeds from the Lawsuit.

12. On September 7, 2012, Shaked filed a proof of claim in the secured amount of $95,012.40. The claim is based on a judgment that Shaked obtained against Sas in January 2009, for which a prejudgment writ of attachment had been issued in October 2007. No objection to the proof of claim was filed and it currently is deemed allowed under Section 502(a).

13. On October 9, 2012, Plaintiff Funding Holding, Inc., filed a proof of claim in the secured amount of $122,879.55. The claim is based on an agreement dated May 16, 2006, whereby Sas borrowed funds in exchange for an equivalent assignment of his interest in the

against the $200,000 Arbitration Award therefore is $319,942.64.[14]

On October 10, 2012, the Trustee filed a separate adversary proceeding, Adversary No. 12–01235–MKN, naming Attorney Arin, Arin & Associates, Shaked, Plaintiff Funding and Debtors as defendants. In her complaint, the Trustee seeks declaratory relief, avoidance of postpetition transfers pursuant to Section 549, turnover of estate property pursuant to Section 542, and disgorgement of any fees paid to Arin & Associates.

## DISCUSSION

The instant motion seeks turnover of the Arbitration Funds. In order to do so, the order closing the case must be revoked so that the Arbitration Funds are no longer abandoned to the Debtors by operation of Section 554(c).

## I. Revocation of Abandonment.

 Section 554 provides that an unadministered, scheduled asset is deemed abandoned at the close of a bankruptcy case, unless the bankruptcy court orders otherwise. 11 U.S.C. § 554(c). This technical abandonment is generally irrevocable unless appropriate circumstances exist. See DeVore v. Marshack (In re DeVore), 223 B.R. 193, 197 (9th Cir. BAP 1998). Appropriate circumstances include where (1) a debtor provided a trustee with false or incomplete information about an asset;

(2) the debtor did not schedule the asset at all; or (3) the trustee abandoned the asset based on mistake or inadvertence and revocation will not cause undue prejudice. Id. at 198.

Here, the Debtors disclosed the Lawsuit on their SOFA, and twice on their Amended Schedules "B" and "C," and therefore, the second basis for revoking abandonment (complete failure to disclose an asset) is not applicable in this case. Accordingly, the court will evaluate the two remaining potential appropriate circumstances that may support revocation.

### A. *False or Incomplete Information Provided by Debtors to Trustee.*

 A debtor must prepare his schedules accurately and completely. See Cusano v. Klein, 264 F.3d 936, 946 (9th Cir.2001). However, a debtor's imprecise description of an asset in his schedules that is "not so defective [as to] forestall a proper investigation of the asset," does not provide a basis for revocation of abandonment. Id. In Cusano, the Ninth Circuit found that the debtor's listing of "song-rights" worth an unknown value was sufficient to provide a party with "inquiry notice ... to seek further detail if [the party] required it" even though the description could have been more detailed. Id. at 946–47. Furthermore, "mistakes in valuation will not enable a trustee to recover an abandoned asset, ... not even upon subse-

proceeds of the Lawsuit. The agreement provides that funds advanced would be paid after attorneys fees and costs are satisfied No objection to the proof of claim was filed and it currently is deemed allowed under Section 502(a).

14. A turnover of property of a bankruptcy estate under Section 542(a) applies to "property that the trustee may use, sell, or lease under Section 363 ... or that the debtor may exempt under section 522...." Because the total amount of the liens that the Trustee

references far exceeds the amount of the Arbitration Award, the Trustee must demonstrate how she can use any of the Arbitration Proceeds under Section 363 as a predicate to relief under Section 542. Compare United States v. Whiting Pools, Inc. (In re Whiting Pools, Inc.), 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (turnover ordered where Chapter 11 debtor in possession still held legal title to property in possession of Internal Revenue Service).

quent discovery that the property had a greater value than previously believed." *Id.* at 946.

■ In this case, although the Debtors' estimation of the Lawsuit's value was not accurate in hindsight, this mistaken valuation is not enough by itself to establish that the Debtors provided the Trustee with false or incomplete information and, allow her to recover the abandoned Lawsuit. As established in *Cusano*, an incorrect description as to value does not necessarily establish that the disclosure was false for purposes of revocation of abandonment. Debtors' description of the Lawsuit "was not so defective [as to] forestall [Trustee's] proper investigation of the asset" as their SOFA and Amended Schedules "B" and "C" provided sufficient information to the Trustee to put her on inquiry notice if she desired more detailed information on the Lawsuit. Debtors disclosed the nature of the Lawsuit, the names of the parties, the case number, an estimation of the Lawsuit's value, and the identity of Debtors' counsel for the Lawsuit. These facts were sufficient to provide a party with notice that the Lawsuit had some value, and the Debtors included enough facts so that the Trustee could independently investigate the action. She had several tools available to do so, such as requesting 2004 examinations of the Debtors and their counsel, compelling production of documents regarding the Lawsuit, and reviewing relevant state court records.[15]

The Trustee asserts that Attorney Arin misled her with a $20,000 valuation of the Lawsuit during a phone call prior to the case closing. However, there is no indication of the month or day on which the call took place, nor an identification of the person to whom she spoke. Instead, the Trustee simply states that Arin & Associates told her the value was $20,000. On the other hand, Attorney Arin attests that he verified his telephone logs, correspondence, emails and other records, which reflected that he did not have contact with the Trustee before the bankruptcy case was closed. Based on this record, the Trustee has failed to demonstrate that she was provided with false or misleading information.

In addition, the Trustee overly relies on the discrepancy between the Debtors' $16,150 valuation of the Lawsuit and the ultimate award of $200,000 as support to revoke abandonment. In *Adair*, the debtor listed her personal injury lawsuit's value as $20,000 for purposes of available exemption, but ultimately settled her claim for $430,000. 253 B.R. at 87. The Chapter 7 trustee sought to revoke abandonment of the lawsuit because he claimed that information supplied by the debtor misled him, and that she should have provided him with updates regarding the litigation. *Id.* at 88.

Similar to *Adair*, the Debtors here claimed the exact amount allowed under applicable law for a personal injury exemption, i.e., $16,150 under Nevada law. In *Adair*, the debtor was allowed to keep the proceeds from the abandoned lawsuit even though her settlement provided her with

---

15. *See Vasquez v. Adair (In re Adair)* 253 B.R. 85, 91 (9th Cir. BAP 2000) ("The trustee has the ability to, in effect, establish his or her own discovery rules and time lines with regard to obtaining additional information concerning assets of the estate. A chapter 7 trustee has at least three options. First, the trustee may make an explicit request for additional information. A debtor must comply with such a request in accordance with § 521(a)(3). Second, a trustee may at any time seek a court order allowing him to examine a debtor pursuant to Rule 2004. Finally, a trustee may adjourn the § 341 meeting of the creditors pending the receipt of satisfactory information from the debtor.").

much more compensation than the $20,000 she listed for exemption purposes. This is no different: the Debtors in the instant case also ultimately obtained substantially more in the settlement of their Lawsuit than was listed as the value in their Amended Schedules "B" and "C." Moreover, as the appellate panel acknowledged in *Adair*, the Debtors did not have a continuing duty to update the Trustee on the Lawsuit; rather, the Trustee "bore the burden of acting if [she] wanted further updated information about the Lawsuit." 253 B.R. at 91.

The Trustee's argument that there could be no other plausible explanation for her reporting Debtors' case as having no assets other than Debtors' and their counsel's misrepresenting the value of the Lawsuit, is frankly; unconvincing. The Trustee may have concluded that the Lawsuit was of little value, which in hindsight, proved to be incorrect. Neither the court nor the bankruptcy system assumes bankruptcy trustees to be infallible; were it otherwise, court approval of actions by trustees would not be required, nor would trustee bonds be necessary.[16]

### B. *Mistake or Inadvertence of Trustee Without Undue Prejudice.*

■■■■ In determining whether to revoke *technical abandonment* based on a trustee's mistake or inadvertence, courts look to FRCP 60(b)(1), which provides that a party may be granted relief from a final order if "mistake, inadvertence, surprise or excusable neglect" is shown.[17] *See In re Gonzalez*, 302 B.R. 687, 693 (Bankr. C.D.Cal.2003); *In re Johnson*, 361 B.R. 903, 910 (Bankr.D.Mont.2007) (declining to consider FRCP 60(b)(1) because the trustee failed to bring the motion within one year after the debtors' case had closed). The following equitable considerations are weighed on a motion under FRCP 60(b)(1): (1) "the danger of prejudice to the [nonmoving party]," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 385, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). *See Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir.2000) (recognizing that *Pioneer* addresses cases of inadvertent mistake); *see also Gonzalez*, 302 B.R. at 694.

As to the first *Pioneer* factor, the general rule of irrevocability for abandonment preserves finality, which can be seen as inhibiting prejudice to parties who rely on the abandonment by allowing them to move on with certainty. *See DeVore*, 223 B.R. at 198. However, simply requiring a party to litigate the merit of its position generally does not create a significant risk of prejudice. *See In re Walker*, 332 B.R. 820, 830 (Bankr.D.Nev.2005). "To be prejudicial, the setting aside of a judgment must result in greater harm than simply

---

16. *See Adair*, 253 B.R. at 91 (finding that a trustee's "failure to request [updated] information, and his decision to abandon, which decision he now regrets, do not mean that the bankruptcy court abused its discretion in refusing to reopen Debtor's case and revoke the Trustee's abandonment of the Lawsuit. A bankruptcy case should not be reopened to allow recovery of an asset that the trustee decided not to pursue.").

17. A motion for relief from an order based on mistake or inadvertence, as the Trustee is seeking here, must be brought within one year of the entry of the order. The date of the order closing Debtors' case, which caused the technical abandonment of the Lawsuit to occur, was October 26, 2011. The Trustee filed the present Motion on September 14, 2012, seeking relief from the order closing the case. It therefore was timely filed.

delaying resolution of the case." *Id., citing TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 701 (9th Cir.2001). The harm caused by setting aside an order must be tangible, meaning that it hinders the moving party's ability to pursue its claim. *Id.*

Here, the fact that the Arbitration Funds have not yet been distributed [18] favors the Trustee's position, because there would be no undue prejudice caused by having to reverse any prior transfers. In addition, Attorney Arin's argument that he relied on abandonment, and he continued to pursue the Lawsuit is not persuasive because Sas prevailed before the case closed. The only action he had to take afterwards was to collect payment of the Arbitration Funds. Moreover, based on the existence of competing claims to the Arbitration Funds, it is very likely that Attorney Arin, and Arin & Associates would have to litigate their claim and priority regardless of revocation of abandonment. Having to do so in bankruptcy instead of some other forum by itself is not undue prejudice. Arguably, the risk of undue prejudice does not weigh against the Trustee's request to revoke abandonment.

The second factor, length of delay and potential impact on the judicial process, weighs heavily against granting the Turnover Motion. It took the Trustee almost a full year after the Debtors' case was closed, and more than a year and a half to seek revocation, after she reported Debtors' case as having no assets. This lengthy delay suggests that the Trustee did not move diligently to revoke abandonment and militates against relief. As to the potential judicial impact of granting

revocation, it is important to note that doing so will require litigation that will very likely result in no actual benefit to the estate. The Trustee noted that the three alleged secured claims against the Arbitration Funds together would entirely consume the available proceeds.[19] The use of the court and the parties' resources and time on a case that probably will result in zero gain for the estate and creditors, according to the Trustee's own representations, *see* note 14, *supra,* strongly militates against the Trustee's request for relief from abandonment.

Regarding the third factor, the Trustee had control of her ability to investigate the Lawsuit, as well as the Debtors and their counsel's representations regarding the same. As discussed above, Debtors provided the Trustee with enough information about the Lawsuit so that she could perform the required diligence. The Trustee argues that Sas's medical bills, allegedly totaling $80,000, should have given Debtors and/or Attorney Arin knowledge that the Lawsuit was worth more than originally believed. However, her assertion cuts both ways. The $80,000 in medical bills also means that there was objective information from which the Trustee could have learned of the damages incurred to-date and compared that amount with the value listed on Debtors' schedules. Overall, this factor strongly disfavors the Trustee because she had a responsibility to thoroughly assess estate property, including the Lawsuit, and the court is not convinced that she was inhibited from doing so or lulled into abandonment by the Debtors or their counsel.

---

**18.** During the hearing on the Turnover Motion, counsel for Arin & Associates stated that the Arbitration Funds are currently being held in its account and have not been disbursed.

**19.** Sas's award was $200,000, compared to $319,942.64 in claims asserted against the Arbitration Funds.

Finally, with respect to the fourth factor, the Trustee does not appear to be acting in bad faith. While the effort made by the Trustee to investigate the Lawsuit fell below what should and could have been done, there is no indication that Trustee had a motive to harm the Debtors or their creditors by first allowing the Lawsuit to be abandoned and now seeking to administer it. Unfortunately for the Trustee, her lack of bad faith is not enough to overcome the second and third *Pioneer* factors.

In short, the Trustee has failed to meet her burden of demonstrating the appropriate circumstances warranting revocation of the abandonment resulting from her closure of the case.

## II. Turnover of Estate Property.

In the Turnover Motion, Trustee seeks turnover of property that she abandoned, i.e., the Arbitration Funds stemming from Sas's success in the Lawsuit. However, because the Arbitration Funds are not property of the estate,[20] her request for turnover must be denied. Based on the foregoing,

**IT IS HEREBY ORDERED** that the Motion for Turnover of Arbitration Funds and to Revoke Abandonment on Order Shortening Time, brought by the Chapter 7 trustee, Docket No. 61, be, and the same hereby is, **DENIED.**

---

20. *See Murray v. Nagy (In re Nagy)*, 432 B.R. 564, 569 (Bankr.M.D.La.2010) (observing that "Once the property was abandoned from the estate, the trustee and estate had no interest in it."). *See also Rigby v. Hall (In re Hall)*, 42 F.3d 1399 (9th Cir.1994) (unpublished table decision), 1994 WL 681025, at *3 (noting that technically abandoned property was no longer property of the estate).